IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Bankruptcy No. 14-70184-JAD |
| BRENDA M. THOMAS, | : | |
| | : | Chapter 7 |
| Debtor. | : | |
| _____ | X | |
| PENNSYLVANIA STATE | : | Adversary No. 14-7032-JAD |
| EMPLOYEES' RETIREMENT | : | |
| SYSTEM, | : | Doc. Nos. 25 and 38 |
| | : | |
| Plaintiff, | : | |
| | : | |
| -v- | : | |
| | : | |
| BRENDA M. THOMAS, | : | |
| | : | |
| Defendant. | : | |
| _____ | X | |

## <u>MEMORANDUM OPINION</u>

This adversary proceeding presents the legal question as to whether the automatic stay in bankruptcy, or alternatively the discharge in bankruptcy, precludes the Pennsylvania State Employees' Retirement System ("PSERS") from temporarily adjusting downward certain disability pension benefits payable to Ms. Brenda M. Thomas (the "Debtor") on account of various overpayments made by PSERS to the Debtor.

This matter is a core proceeding over which the Court has the requisite subject-matter jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A) 157(b)(2)(G), 157(b)(2)(I), 157(b)(2)(J), 157(b)(2)(O), and 1334(b).

00015554

Because neither the automatic stay nor bankruptcy discharge precludes PSERS from "recouping" the overpayments at issue, judgment on the pleadings shall be entered in favor of PSERS. Therefore, under the unique facts and circumstances of this case, and for the reasons set forth more fully below, an order shall be entered that allows the adjustments sought by PSERS.

## I.
## THE ALLEGATIONS and PROCEDURAL POSTURE

The adversary complaint filed by PSERS is 66 paragraphs long and has 4 exhibits. The Debtor answered the allegations set forth in the complaint, essentially admitting a number of material factual allegations and primarily disputing the legal conclusions or contentions of PSERS.

In addition to answering the allegations set forth in the complaint, the Debtor has filed a 15 paragraph counterclaim against PSERS. A number of the material factual allegations in the counterclaim have been admitted by PSERS, but likewise the legal conclusions have been denied by PSERS.

Despite the 81 total paragraphs of allegations between the parties, and the 4 exhibits whose authenticity is not contested, the material facts not in dispute between the parties can be boiled down as follows:

1.   The Debtor commenced this bankruptcy case by filing a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code on March 27, 2014. See *Complaint to Determine Dischargeability of Debt* (the "Complaint") at ¶4;  *Answer and Counterclaim* (the "Answer") at ¶4.

2.   Prior to the bankruptcy filing, the Debtor was an employee of the Commonwealth of Pennsylvania and was employed with the

Department of Public Welfare (the "DPW"). <u>See</u> Complaint at ¶18; Answer at ¶18.

3.  The Debtor's active government service with the DPW was originally terminated on November 23, 2013. In connection with the same, the Debtor submitted the necessary paperwork with PSERS to commence annuity payments pursuant to an early retirement plan administered by PSERS– with a retirement date of November 24, 2013 (which is the day after the termination date of her employment). <u>See</u> Complaint at ¶ 19 and at Exhibit 1; Answer at ¶19.

4.  Even though the effective date of termination was November 23, 2013, and the retirement date was November 24, 2013, the date on which the Debtor submitted her early retirement paperwork was December 27, 2013. <u>Id</u>.

5.  Prior to the early retirement paperwork being submitted, the Debtor (through her employee union) filed a grievance with the DPW on December 5, 2013 contending that the Debtor was wrongfully terminated. <u>See</u> Complaint at ¶ 21; Answer at ¶ 21. The specific factual and legal basis of the wrongful termination claim has not been pled by any party to this action.

6.  The Debtor received her first early retirement annuity pension plan payment on February 14, 2014. The amount paid by PSERS was $4,317.24, and was the amount the Debtor was to receive for the period of November 24, 2013 through March 1, 2014. <u>See</u> Complaint at ¶¶20, 32, and 34; Answer at ¶¶20, 32, and 34.

7.  As set forth in a letter dated February 12, 2014 (which was two days prior to the Debtor's receipt of the early retirement pension payment set forth above), the Debtor and the DPW settled the wrongful termination grievance of the Debtor. While the Debtor executed the February 12, 2014 settlement letter on February 19, 2014, the terms of the settlement provided that (a) the Debtor's November 23, 2013 termination date was rescinded; (b) the Debtor's employment status was retroactively placed on a "suspension without pay or benefits" status for the period of November 23, 2013 through February 20, 2014; and (c) the Debtor would be reinstated to active employment for the period of February 21, 2014 through February 25, 2014 to enable the Debtor to submit a disability retirement application with SERS. <u>See</u> Complaint at ¶22 and Exhibit 2; Answer at ¶22.

8. The net effect of the settlement was that the Debtor was not eligible to receive the early retirement payment of $4,317.24 on February 14, 2014, and the Debtor acknowledges that such sums received were an "overpayment." See Answer at ¶28, ¶32 and ¶34.

9. The Debtor submitted an application for disability retirement with PSERS on February 25, 2014, which was approved by PSERS with a retirement date of February 26, 2014. See Complaint at ¶27 and Exhibit 3; Answer at ¶28.

10. While the maximum vested amount payable monthly under the Debtor's disability retirement plan with PSERS was $1,640.39, see Complaint at Exhibit 3, the parties acknowledge that the amount is $1,641.48. See Complaint at ¶37; Answer at ¶37.

11. For the period of February 26, 2014 through April 30, 2014, PSERS owed $3,556.54 to the Debtor for disability annuity payments due her for the time period of February 26, 2014 through April 30, 2014. See Complaint at ¶35; Answer at ¶35.

12. By letter dated April 24, 2014, PSERS advised the Debtor that it was adjusting the disability amounts due the Debtor as a result of the early retirement overpayments.  That is, PSERS advised the Debtor that it was "deducting" the overpayments ($4,317.24) from the disability payments through April 30, 2014 ($3,556.54), which left a "remaining overpayment of $760.70" due from the Debtor. See Complaint at ¶36 and Exhibit 4; Answer at ¶34 and ¶35.

13. In April of 2014, PSERS also erroneously sent to the Debtor two checks for the month of April, resulting in an another overpayment of $1,641.48 to the Debtor.  When it learned of the error, PSERS contacted the Debtor on or about April 24, 2014 and warned the Debtor of the error. Notwithstanding the warning, the Debtor cashed the second check thereby increasing the net amount of the overpayment to $2,402.18 (that is, the $760.70 listed above plus the $1,641.48 identified herein). See Complaint at ¶¶37-40 at Exhibit 4; Answer at 37-40.

14. By letter dated April 24, 2014, PSERS further advised the Debtor that the Debtor "will be required to repay [these overpayments] in one of two ways.  By a lump sum payment by July 1, 2014 or by 18 equal monthly deductions to be withheld from your monthly pension payment . . . ." See Complaint at Exhibit 4.

15.   The lump sum payment was never made by the Debtor, instead she amended her schedule of creditors by adding PSERS as a creditor in May of 2014. <u>See</u> Complaint at ¶8;  Answer at ¶8.

16.   The Debtor also went on the offensive and contended that PSERS has willfully violated the automatic stay by both (a) netting the reciprocal obligations between the parties, and (b) by demanding that the remaining overpayments be repaid or returned. <u>See</u> Counterclaim at Exhibit A.

17.   On July 6, 2014, the Debtor also filed an adversary complaint against PSERS at Adversary No. 14-7031-JAD, alleging that PSERS has willfully violated the automatic stay.

18.   In light of the Debtor's position with respect to the automatic stay, PSERS never made the monthly deductions to the disability pension payments due the Debtor from and after April 30, 2014.  Instead PSERS filed the instant adversary proceeding on July 11, 2016 at Adversary No. 14-7032-JAD. <u>See</u> *Plaintiff Pennsylvania State Employees' Retirement System's Reply to Defendant/Debtor's Counterclaim* at ¶2.

19.   In the complaint filed at Adversary No. 14-7032-JAD, PSERS seeks a determination that (a) the unpaid overpayments are not "debts" subject to a discharge in bankruptcy, and (b) nothing in the automatic stay prevents PSERS from "recouping" the "overpayments" against the Debtor by SERS making temporary downward adjustments to the monthly disability pension amounts due the Debtor.

20.   Given the overlapping nature of the issues presented, Adversary No. 14-7031-JAD was voluntarily dismissed by the Debtor, and the affirmative claim(s) asserted therein were re-asserted as counterclaims in the adversary proceeding at Adversary No. 14-7032-JAD.

After the pleadings closed, both PSERS and the Debtor moved for judgment on the pleadings.  By these dueling motions, the parties are asking that the Court determine whether the adjustments made and/or contemplated by PSERS are lawful, and whether they violate either the automatic stay or discharge in

bankruptcy.  If the adjustments violate the automatic stay, the Debtor also asks that the Court find that PSERS has committed a willful violation of the automatic stay subjecting PSERS to the imposition of compensatory damages, punitive damages, and attorneys' fees and costs.

## II.
## LEGAL STANDARD

Fed.R.Civ.P. 12(c), as incorporated by reference in Fed.R.Bankr.P. 7012, permits a party to move for judgment on the pleadings.  When a party moves for judgment on the pleadings, the Court is to ascertain whether the pleadings raise any material factual disputes; and if there are none, the Court is to determine whether the moving party is entitled to judgment as a matter of law.  See Inst. for Scientific Info., Inc. v. Gordon and Breach, Sci. Publishers, Inc., 931 F.2d 1002, 1005 (3d Cir. 1991).  As to the latter component, the motion for judgment on the pleadings is akin to a motion to dismiss under Fed.R.Civ.P. 12(b)(6). See Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

Fed.R.Civ.P. 12(b)(6) provides that complaints may be dismissed for "failure to state a claim on which relief can be granted."

In deciding such a motion, the Court "may consider material which is properly submitted as part of the complaint . . . without converting the motion to dismiss into a motion for summary judgment." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

The Court may also consider: documents the complaint incorporates by reference or are otherwise integral to the claim (see Rosenfield v. HSBC Bank, USA, 681 F.3d 1172, 1178 (10th Cir. 2012), Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012), Building Indus. Elec. Contractors Ass'n v. City of New York, 678 F.3d 184, 187 (2d Cir. 2012)), information subject to judicial notice (see Schatz v. Republication State Leadership Comm., 669 F.3d 50, 55-56 (1st Cir. 2012), Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1016 n. 9 (9th Cir. 2012), Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010)), and matters of public record such as orders and other materials in the record of the case (see Miller v. Redwood Toxicology Lab, Inc., 688 F.3d 928, 931 n. 3 (8th Cir. 2012)).

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556); see also Erickson v. Pardus, 551 U.S. 89 (2007)(applying Twombly standard to *pro se* complaint).

Determining whether a claim for relief is plausible is a "context-specific task" requiring the court to "draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d

Cir. 2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation to the elements of a cause of action will not do.'" Id. at 678.

Additionally, the court need not accept as true bald assertions (or bald conclusions or inferences), legal conclusions couched or masquerading as facts, or conclusions contradicted by the complaint's own exhibits or other documents of which the court may take proper notice. See Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008); Bishop v. Lucent Tech., Inc., 520 F.3d 516, 519 (6th Cir. 2008); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(the court is not obligated to "swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited").

## III.
## DISCUSSION

The adversary Complaint filed by PSERS contains three counts, each of which ask for the same kind of relief. That is, PSERS contends that it has the right to adjust the disability pension payable to the Debtor on account of the overpayments. PSERS further contends that neither the bankruptcy discharge nor the automatic stay precludes the action(s) taken or contemplated by PSERS.

While PSERS seeks relief declaring that its conduct (or contemplated conduct) is not enjoined by the automatic stay (or that it is not precluded by any discharge of the Debtor), the legal basis of the relief sought by PSERS is difficult to follow.

The Court makes this observation because PSERS devotes a substantial amount of space in its documents contending that the Debtor's interest in the disability pension at issue is not property of the estate.

Citing Patterson v. Shumate, 504 U.S. 753 (1992) and Sections 522(b)(2), 522(d)(12) and 541(c)(2) of the Bankruptcy Code, PSERS argues that the Debtor cannot hide behind the automatic stay and/or discharge in bankruptcy to prevent PSERS from making the adjustments because the pension at issue is excluded from the ambit of "property of the estate." PSERS' argument in this regard is not persuasive.

Whether or not the Debtor's interest in the disability pension is "property of the estate" is not solely determinative as to whether the action(s) taken or contemplated by PSERS violates debtor protections under the Bankruptcy Code. This conclusion is necessary because property of the estate is not the only interest protected by the automatic stay. Rather, the automatic stay also protects the Debtor herself and her non-estate property from creditor efforts to collect a pre-bankruptcy "claim." See 11 U.S.C. § 362(a)(6)(declaring that the automatic stay prevents creditors from taking "any act to collect, assess, or recover a ***claim against the debtor*** that arose before the commencement" of the bankruptcy case)(emphasis added).

The fact that this broad protection to the Debtor is provided in the Bankruptcy Code is not surprising. The automatic stay is necessary to give the Debtor breathing room from creditor collection efforts while the Debtor pursues

the fresh start that is the hallmark of bankruptcy relief. In re University Medical Center v. Sullivan (Univ. Med. Ctr.), 973 F.2d 1065, 1074 (3d Cir. 1992); see also H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6296-97.

Stated in other words, the automatic stay is a temporary injunction that is, absent termination of the same by way of an order of this Court, designed to maintain the *status quo* until such time the Debtor's case is concluded.  See Citizens Bank of Maryland v. Strumpf, 516 U.S. 16 (1995).  This is why the automatic stay protects not only property of the bankruptcy estate, but also both the Debtor individually and property of the Debtor. See e.g., 11 U.S.C. §§ 362(a)(2), (3), (4), (5), (6), and (7).  As such, the Debtor's personal interest in the pension falls squarely within the protections afforded by the automatic stay if, and to the extent, that PSERS adjustments of it are efforts to collect a pre-petition "claim."

It is also worth emphasizing that the automatic stay is further designed to replace the "unfair race to the courthouse" with an orderly liquidation of bankruptcy estate assets so that creditors similarly situated are treated equally. United States v. Nicolet, Inc., 857 F.2d 202, 207 (3d Cir. 1988).  In this regard, the automatic stay protects not only the Debtor, but also her creditors.  The automatic stay therefore operates to enjoin rogue creditors from unilaterally obtaining preferential treatment by way of a "setoff of any debt owing to the debtor that arose before the commencement of the case . . .  against any claim against the

00015554                                -10-

debtor . . ." See 11 U.S.C. § 362(a)(7).  In fact, the only way that a creditor may

offset mutual pre-petition debts arising between a debtor and creditor is upon

proper application to the Court, see 11 U.S.C. § 553, which was never done in this

case.  Therefore, a fundamental question in this case is whether PSERS actions

are improper "setoffs" or something else (namely a "recoupment").

Complicating this issue is PSERS's complaint seeking a determination that

its actions would not violate a discharge in bankruptcy.

With respect to the impact of the discharge in bankruptcy, the Complaint

filed by PSERS contends that its ability to adjust the Debtor's disability pension

is excepted from discharge by operation of 11 U.S.C. § 523(a)(18). See Complaint

at ¶12.  This cause of action by PSERS fails because the plain language of Section

523(a)(18) of the Bankruptcy Code affords PSERS no relief under the unique facts

alleged in this case.

Specifically, Section 523(a)(18) excepts from discharge any debts owed to a

pension plan on account of "a loan" provided by a qualified pension plan pursuant

to certain provisions of the Employee Retirement Income Security Act of 1974 or

the Internal Revenue Code of 1986.  Since PSERS has not alleged that it has a

claim on account of a "loan," any adjustment sought by PSERS with respect to the

Debtor's pension does not fall within the exception to discharge found at 11 U.S.C.

§ 523(a)(18).

The preceding analysis does not end the matter.  A fair reading of the

Complaint is that PSERS is not relying solely on Section 523(a)(18) of the

Bankruptcy Code as a basis for its non-dischargeability lawsuit. Similar to its contention that the automatic stay is inapplicable to its actions, PSERS seems to be contending that PSERS' right to adjust the Debtor's disability pension on account of the overpayments is not an act to recover a "debt" or "claim." With its acts not being acts to recover a "debt" or "claim," the argument goes, PSERS alleges that neither the automatic stay nor discharge in bankruptcy precludes the adjustments sought by PSERS. PSERS' argument here does have some merit.

Applicable law provides that only *in personam* "debts" are discharged under the Bankruptcy Code. See 11 U.S.C. §§ 524(a)(1) and 524(a)(2); see also Johnson v. Home State Bank, 501 U.S. 78, 83 (1991) and Dewsnup v. Timm, 502 U.S. 410, 420 (1992). In addition, as to the Debtor, applicable law provides that efforts to collect a pre-petition "claim" are stayed by the automatic stay. See 11 U.S.C. § 362(a)(6). Of course, the term "debt" as used in the Bankruptcy Code is synonymous to the term "claim" because the Bankruptcy Code defines the term "debt" as a "liability on a claim." See 11 U.S.C. § 101(12).

In its pleadings, PSERS contends that the adjustments it seeks to have recognized are mere "recoupments" and not affirmative acts to recover a "claim" or "debt." But, what is a "recoupment" and how does it differ from an affirmative act to collect a debt or claim by way of a "setoff"? The answer to this question is not as simple as one would think.

The equitable remedy of "recoupment" has garnered much print in judicial opinions, as well as in legal academia. See e.g., Davidovich v. Welton (In re

Davidovich), 901 F.2d 1533 (10th Cir. 1990); Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392 (9th Cir. 1996); Kosadnar v. Metropolitan Life Ins. Co. (In re Kosadnar), 157 F.3d 1011 (5th Cir. 1998); Beaumont v. Dep't of Veteran Affairs (In re Beaumont), 586 F.3d 776 (10th Cir. 2009); Slater Health Center, Inc. v. United States (In re Slater Health Center, Inc.), 398 F.3d 98 (1st Cir.  2005); Fischbach v. Centers for Medicare and Medicaid Svcs. (In re Fischbach), 464 B.R. 258 (Bankr. D.S.C. 2012); Brown v. General Motors Corp., 152 B.R. 935 (W.D. Wis. 1993); see also, Shalom L. Kohn, Recoupment Re-Examined, 73 Am. Bankr. L.J. 353 (1999).

The fact that there are many judicial opinions dealing with the equitable doctrine of "recoupment" is not surprising because the unilateral "setoff" of mutual debts without a prior order of the Court can constitute a violation of the automatic stay as set forth in 11 U.S.C. § 362(a)(7) and is counter to the notion that one creditor should not be afforded preferential treatment in a bankruptcy ahead of other creditors similarly situated. See Stephenson v. Salisbury (In re Corland Corp.), 967 F.2d 1069, 1076 (5th Cir. 1992)(right of setoff is stayed pending an orderly examination of the debtor's and creditor's rights); Small Business Administration v. Rinehart, 887 F.2d 165, 169 (8th Cir. 1989)(same).[1]

A significant reason why the doctrines of setoff and recoupment can be confusing is because they both involve the netting of obligations to avoid "the

---

[1] Creditors who willfully violate the automatic stay can be subject to claims for compensatory damages, attorneys fees, and, in some cases, punitive damages. See 11 U.S.C. § 362(k).

absurdity of making A pay B when B owes A." See e.g., Citizens Bank of Maryland v. Strumpf, 516 U.S. at 18 (quoting Studley v. Boyleston Nat. Bank, 229 U.S. 523, 528 (1913)).

One significant difference between setoff and recoupment is that in the fight between reciprocal obligations, the doctrine of setoff is offensive in nature and can result in an affirmative judgment in favor of the party to whom the greater obligation is owed.[2] See e.g., American Cent. Airlines v. Dep't of Transp. (American Cent. Airlines), 60 B.R. 587, 590 (Bankr. N.D. Iowa 1986)(setoff usually asserted to reduce claim but "defendant may be entitled to a judgment in his favor for any excess over and above creditor's claim against debtor."); Styler v. Jean Bob Inc., (In re Concept Clubs, Inc.), 154 B.R. 581, 585-586 (D. Utah 1993); see also Stulz v. Boswell, 453 A.2d 1006, 1008 (Pa. Super. 1982). Given the affirmative recovery nature of setoff, a demand for setoff is a "debt" or "claim" in bankruptcy. See e.g., Lee v. Schweiker, 739 F.2d 870, 872 (3d Cir. 1984)("[s]etoff, in effect, elevates an unsecured claim to secured status . . ."); In re Monongahela Rye Liquors, 141 F.2d 864, 869 (3d Cir. 1944)("[s]et-off rests upon a claim or demand based upon an independent cause of action."); Cohen v. Sav. Bldg. & Loan Co. (In re Bevill,

---

[2] Another significant difference between setoff and recoupment is that setoff is available only in bankruptcy when the opposing obligations arise on the same side of the time-line demarcated by the bankruptcy petition date (i.e., both had arisen prior to the petition date or both subsequent to the petition date). If the reciprocal obligations do not fall on the same side of the time-line (i.e., one accrued prior to the petition date, and the other subsequent to the petition date), setoff will not be permitted. Recoupment, however, is not so limited by this temporal requirement. See generally Lee v. Schweiker, 739 F.2d 870 (3d Cir. 1984).

00015554                                    -14-

<u>Bresler & Schulman Asset Mgmt. Corp.</u>), 896 F.2d 54 (3d Cir. 1990)(setoff depends on existence of mutual debts and claims between creditor and debtor). Recoupment, on the other hand, is purely defensive in nature and is not an effort to collect a "debt" or "claim." <u>See</u> <u>e.g.</u>, <u>Aetna Life Ins. Co., v. Bram (In re Bram)</u>, 179 B.R. 824 Bankr. E.D. Tex. 1995); <u>Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan)</u>, 270 B.R. 749 (B.A.P. 9th Cir. 2001); <u>Sigman v. Aetna Life Ins. Co. (In re Sigman)</u>, 270 B.R. 858 (Bankr. S.D. Ohio 2001). Since recoupment is an affirmative defense, this equitable doctrine merely seeks to adjust downward the amount of the plaintiff's demand in light of the reciprocal demand of the defendant. <u>See</u> <u>e.g.</u>, <u>Anthem Life Ins. Co. v. Izaguirre (In re Izaguirre)</u>, 166 B.R. 484, 490-93 (Bankr. N.D. Ga. 1994).

Case law within the Third Circuit has examined the differences between setoff and recoupment, and has defined the contours by which the equitable doctrine of recoupment may be invoked in bankruptcy.

In <u>University Medical Center</u>, <u>supra</u>., the Third Circuit defined the equitable doctrine of "recoupment" as follows: "the setting up of a demand ***arising from the same transaction*** as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." <u>Univ. Med. Ctr.</u>, 973 F.2d at 1079 (<u>quoting</u> 4 COLLIER ON BANKRUPTCY § 553.03, at 553–15–17) (emphasis in original). Similarly, the Third Circuit also explained in <u>Lee v. Schweiker</u>:

> The justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the ***same transaction*** as the debtor's claim, it is essentially a defense to the debtor's claim

against the creditor rather than a mutual obligation, and application
of the limitations on setoff in bankruptcy would be inequitable.

Lee v. Schweiker, 739 F.2d 870, 875 (3d Cir. 1984)(emphasis added).

As can be seen by the Third Circuit's opinions in University Medical Center
and Schweiker, the crucial distinction between setoff and recoupment in
bankruptcy is whether the obligation owed by the debtor to the non-debtor party
arose out of the same transaction as the obligation owed by the non-debtor party
to the debtor. See also Holyoke Nursing Home, Inc. v. Health Care Fin. Admin. (In
re Holyoke Nursing Home, Inc.), 372 F.3d 1, 3 (1st Cir. 2004).

What constitutes the "same transaction" has been interpreted differently by
the various courts that have examined this issue. A number of courts determining
whether a "single transaction" has occurred have framed the issue as to whether
a "logical relationship" exists between the competing demands. See e.g., Newbery
Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392 (9th Cir. 1996); Holyoke Nursing
Home, Inc., supra.; Sims v. United States Dep't of Health and Human Servs. (In
re TLC Hospitals, Inc.), 224 F.3d 1008 (9th Cir. 2000); United States v. Consumer
Health Servs. of America, Inc., 108 F.3d 390 (D.C.C. 1997).

In the "logical relationship" test, the view of a "single or same transaction"
is flexible and allows for a series of occurrences to be considered part of the "same
transaction." Under the "logical relationship" view, the series of occurrences
depends not "so much on the immediateness of their connection as upon their

logical relationship [to the dueling demands in question]." <u>Newbery</u>, 95 F.3d at 1402 (citing <u>Moore v. New York Cotton Exchange</u>, 270 U.S. 593 (1926)).

Other courts - of particular importance here, the Third Circuit - take a more strict view of the "single transaction" requirement for recoupment.  In this more narrow view or approach, known as the "integrated transaction" test, a mere logical relationship is not enough.  As the Third Circuit opined the "fact that the same two parties are involved, and that a similar subject matter gave rise to both claims, . . . does not mean that the two arose from the same transaction." <u>Univ. Med. Ctr.</u>, 973 F.2d at 1081(citing <u>Lee v. Schweiker</u>, 379 F.2d at 875 (quotations omitted)).  Rather, the reciprocal obligations at issue must "arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." <u>Id.</u>

Given the Third Circuit's more restrictive view of what constitutes a "single or same transaction" for purposes of recoupment, one would think that the determination of whether recoupment would apply in this case is a relatively simple task.  For example, in <u>University Medical Center</u>, the Third Circuit declined to apply the recoupment doctrine to enable the government to recapture Medicare overpayments because the reimbursement rights of the debtor arose in different years in which the overpayments were made by the government.  Because the Medicare regulations in that case provided that each medical provider's cost year was subject to a distinct annual audit following the submission of a separate cost report each fiscal year, the Third Circuit concluded that the transactions at issue

in University Medical Center constituted a series of separate transactions, as opposed to a single transaction. Because of the applicable regulations imposed temporal requirements for audit and true-up of obligations, and because the dueling obligations of the parties did not arise in the same annual audit period, and were thus a series of separate transactions, the Third Circuit declined to label the recapture of overpayments as a "recoupment" in University Medical Center.

In looking at the admitted facts in the case *sub judice*, it appears that this case involving Ms. Thomas is different than what involved the debtor in University Medical Center.

Yes, it is true that the Debtor, Ms. Thomas, submitted paperwork and was awarded an initial early retirement. It is true that her early retirement pension was later converted to a disability retirement pension by agreement of the parties. Relying on these facts, the Debtor appears to contend that these items arose at different times, and that the reciprocal obligations between PSERS and the Debtor do not constitute the same or single transaction for purposes of recoupment. However, it is this Court's view that any temporal argument that the Debtor has in this regard is not persuasive for the simple reason that, in substance, the reciprocal obligations of the parties cascaded from the DPW's termination of the Debtor in November of 2013, which is the transaction for which the parties settled to provide a pension benefit to Ms. Thomas (regardless of whether it is labeled an early retirement pension or disability pension). As such, when you examine the substance of the transaction at issue, it appears to emanate from the sole event

of Ms. Thomas' termination of employment from the DPW and is substantively

unlike the periodic transactions articulated in University Medical Center.

In rendering its decision today, this Court has likewise considered the Third

Circuit opinion in Lee v. Schweiker, supra.,where the Third Circuit noted in the

area of recoupment a difference between "contractual" type cases and

"entitlement" type cases.

In Schweiker, the Third Circuit provided even more strict scrutiny to the

"single transaction" test in cases where the debtor's right to "entitlements" such

as social security, were being impaired, and held that post-petition social security

payments cannot be recouped by the government to recover pre-petition

overpayments under the facts and circumstances of that case because

"entitlements" are not contractual rights subject to the ordinary rules of

bankruptcy. Schweiker, 739 F.2d at 876.

While PSERS is an arm of the Commonwealth of Pennsylvania, this case is

not one involving "entitlements" of the sort found in Schweiker. Rather, this case

is more akin to a situation where you have a private employer who overpaid

pension benefits to a retiree. As such, the "contractual" type of recoupment cases

not subject to the scrutiny provided in "entitlement" cases appear to apply. See

e.g., In re Delicruz, 300 B.R. 669 (Bankr. E.D. Mich. 2003)(recoupment

appropriate where terms of debtor's pension plan provided that disability benefit

payments in excess of the amount that should have been paid may be deducted

from future disability benefits).

In fact, in <u>Delicruz</u>, the bankruptcy court permitted the enforcement of a recoupment provision contained in the private employer pension plan, and the provision in that case was analogous to PSERS' right to adjust future benefit payments under 71 Pa.C.S.A. § 5954 (which directs that PSERS "shall correct the error and so far as practical shall adjust the payments" due the retiree on account of errors in payments).

It also cannot be understated that PSERS is seeking to adjust payments of the disability pension based on the calculation of what the Debtor received, and what she is due under the disability pension statutes at issue. The Court reaches this conclusion because two (2) days before she received her first overpayment, the Debtor settled her grievance and acknowledged that she rescinded her early retirement. Thus, the overpayment she received was an overpayment based on her termination of service and what she is entitled to be paid under the settlement agreement dated February 12, 2014. To hold otherwise would be inequitable.

Lastly, in rendering its decision today, the Court has considered cases such as <u>Thompson v. Bd. of Trustees (In re Thompson)</u>, 182 B.R. 140 (Bankr. E.D. Va. 1995), <u>aff'd</u> 92 F.3d 1182 (4th Cir. 1996) (Table), where the bankruptcy court did not permit the recoupment of disability overpayments from sums due the pension fund on account of retirement benefits. This case, and others, stand in quite contrast to the circumstances surrounding Ms. Thomas' relationship with PSERS.

Specifically, in <u>Thompson</u>, the debtor's right to disability generally, and amount ascertained due, were subject to the debtor's needs at given points in time

that spanned years; and the debtor's election of a retirement pension occurred many years after his cessation of employment.  Indeed, the debtor in <u>Thompson</u> sought  and obtained his retirement pension almost two decades after he started receiving disability payments.  The nexus of these two events was far too strained for the bankruptcy court to find a logical relationship between the reciprocal obligations between the parties.  Thus, citing <u>University Medical Center</u>, the court concluded that the dueling claims between the parties did not arise from the same transaction.

The case between Ms. Thomas and PSERS stands in contrast to the cases of <u>Thompson</u> and <u>University Medical Center</u> in that the rights and obligations of the parties flowed from the same transaction (i.e., the Debtor's termination of service and the ultimate settlement of the grievance as embodied in the letter of February 12, 2014).  The case also stands in contrast to <u>Schweiker</u>, in that it does not involve "entitlements" subject to any further special protection than what the bankruptcy rules and common law provide.  As such, the pleadings indicate that consistent with 71 Pa.C.S.A. § 5954, PSERS is simply seeking to adjust its pay records to reflect exactly what is due the Debtor under the disability pension at issue; and equity dictates that PSERS should be permitted to do so under the unique facts and circumstances admitted by the parties.  To hold otherwise would ignore the realities of the transaction and give the Debtor a "head start," and not a "fresh start" in bankruptcy.  <u>See</u> <u>e.g.,</u> <u>Long Term Disability Plan of Hoffman-LaRoche, Inc. v. Hiler (In re Hiler)</u>, 99 B.R. 238, 245 (Bankr. D. N.J. 1989).

**IV.**
**CONCLUSION**

Accordingly, for the reasons set forth above, an appropriate order will be entered that denies the Motion for Judgment on the Pleadings filed by the Debtor Brenda M. Thomas; grants the Motion for Judgment on the Pleadings filed by PSERS as to the Counterclaim and denies as not ripe the Motion for Judgment on the Pleadings as to the Complaint since the recoupment of overpayments by PSERS is not an act to collect a "debt" or "claim" subject to the discharge.

Dated: May 1, 2015

_____ bwf
JEFFERY A. DELLER
Chief U.S. Bankruptcy Judge

case administrator to serve:

Justin P. Schantz, Esq.
    Counsel to the Debtor/Defendant
Jeffrey M. McCormick, Esq.
    Counsel to the Plaintiff
Lisa M. Swope, Esq.
    Chapter 7 Trustee

FILED
5/1/15 2:45 pm
CLERK
U.S. BANKRUPTCY
COURT - PGH

00015554